IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| ROBERT WAYNE WATSON | § | |
| v. | § | CIVIL ACTION NO. 9:09cv172 |
| DWAYNE HUGHES, ET AL. | § | |

MEMORANDUM OPINION AND PARTIAL ORDER OF DISMISSAL

The Plaintiff Robert Watson, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division, filed this lawsuit complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to issue final judgment pursuant to 28 U.S.C. §636(c). As Defendants, Watson named Dwayne Hughes and Jimmy Hutcherson, employees at the Eastham Unit garment factory; Michael Campbell, the plant manager of the garment factory; and Paula Jones, the law librarian at the Eastham Unit.

An evidentiary hearing was conducted on July 1, 2010. At this hearing and in his complaint, Watson said that he was a sewer in the garment factory. He reported Hughes to Campbell for sleeping on duty, and Hughes began "getting after him." He said that Hughes "directed sexual advances" at him, including placing his hands on Watson's body, leaving candy and a flower leaf on Watson's sewing machine, and rubbing Watson's stomach with his hand. Watson also complained about Hutcherson to Campbell.

On April 7, 2009, Watson said, Hughes called him to go get a pallet of shirts. Watson went to do so, and Hughes and Hutcherson followed him. Hughes said something to him and Watson stopped and said "what?" When he did so, Hughes pushed him over a pallet of pants. Hughes and Hutcherson then began kicking him. Hughes said "I run the shirt line, you stay off of it," which Watson took to refer to the complaint about him sleeping on duty.

1

Although Watson had complained to Campbell about the harassment from Hutcherson and Hughes, Campbell did nothing until after the April 7 incident. When that incident occurred, Watson said, Campbell gave him a use of force form, but would not let him to go to the infirmary, instead telling him to "put in an I-60," which is an inmate request form. When Watson did file a sick call request, he was seen a few days later, and the nurse told him that there was nothing wrong with him; he states that his knee had been swollen after the incident, but that the swelling had gone down by the time that he was seen.

Watson stated that Paula Jones, the law librarian, asked him about the incident, and told him that if he filed anything about it, she would not let him use the law library. Watson says that he did file a complaint, Jones started scheduling him for law library times which conflicted with his work schedule. He stated that he was unable to go to the law library for about a month, which caused him to miss grievance deadlines. He stated that he had wanted to file grievances about not receiving face towels and about the lack of screens on the windows, which caused birds to come into the building where they could steal food. When asked why it was necessary to go to the law library in order to file grievances, Watson explained that he liked to cite the appropriate policies in his grievances, to point out exactly what rule was being violated. He conceded that it was not necessary to cite the policies in order to file a grievance.

## Legal Standards and Analysis

Watson complains that Hughes and Hutcherson pushed him over a pallet and kicked him. These allegations require further judicial proceedings.

Watson also complained that Hughes had made "unwanted sexual advances," including rubbing his stomach, touching his body, and leaving candy and flowers on his sewing machine. A number of courts have addressed similar allegations. In <u>Bunner v. Koch</u>, civil action no. 08-cv-00171 (D.Colo., January 30, 2009) (unpublished) (available on WESTLAW at 2009 WL 798550), the plaintiff alleged that a prison guard named Pagel "grabbed his penis and rubbed it" and that she propositioned him. The Court held that while the conduct at issue was allegedly unwelcome, the

plaintiff had failed to describe conduct that amounted to physically abusive conduct. Similarly, in Boddie v. Schnieder, 105 F.3d 857, 859 (2nd Cir. 1997), a prison guard squeezed the plaintiff's hand, touched his penis, and said "you know your [sic] sexy black devil, I like you," and later bumped into him with her breasts and pinned him up against the door with her whole body. The Second Circuit stated that while the sexual abuse of a prisoner by a guard may in some circumstances violate the Eighth Amendment, the incidents in this case were "isolated episodes of harassment and touching" which did not rise to the level of a constitutional violation either individually or cumulatively. *See also* Davis v. Castleberry, 364 F.Supp.2d 319 (W.D.N.Y. 2005) (officer grabbed the plaintiff's penis during a frisk and said "you should be used to it, as long as you have been here" when the plaintiff complained; the court held that this was insufficient to set out a constitutional claim); Morrison v. Cortright, 397 F.Supp.2d 42 (W.D.N.Y 2005) (officer shone a flashlight into the inmate's rectum and ran his finger between the inmate's buttocks in a wiping fashion, and rubbed his genital area against the inmate's buttocks; the court held that this was insufficient to set out a constitutional claim).

By contrast, in Solliday v. Spence, civil action no. 4:07cv363 (N.D.Fla., March 2, 2009) (unpublished) (available on WESTLAW at 2009 WL 559526), a male officer named Knight would pat down a female inmate named Solliday by running his hands slowly over her body, her rib cage, under her bra, her waist, stomach, hips, down her legs, and then back up. Knight also made comments about "sex toys" when he had a metal detector, waited for Solliday in her room when she came out of the shower, made comments during pat searches about how much he liked touching her body, wanted her to touch his penis, and talked about oral sex. Knight told her that he would arrange to be alone with her and that he had ways of making this happen, that she could not get away from him, and that inmates who gave him a hard time would be "harassed and tormented." These actions were determined to be "repugnant to the conscience of mankind."

Similarly, in Bromell v. Idaho Department of Corrections, civil action no. CV-05-419 (D.Idaho, October 31, 2006) (unpublished) (available on WESTLAW at 2006 WL 3197157), the

3

officer placed his penis against the inmate's buttocks, then reached around to the inmate's chest and squeezed his pectoral muscles, and then squeezed the inmate's penis, saying "you f***ing inmates must like this s*** if you're in here, do you like it when I do this?" These actions also were held to be "repugnant to the conscience of mankind" and sufficient to survive a motion to dismiss.

In the present case, Watson alleges that Hughes touched him a few times, made sexual remarks, and left candy and a flower leaf on his sewing machine. These actions are much more akin to those in Boddie, Davis, and Morrison, and as in those cases, Watson's claim on this point fails to rise to the level of a constitutional claim.

Watson next asserts that he complained to Campbell, the plant manager, about the harassment and threats from Hughes and Hutcherson, but that Campbell did nothing until Watson was actually assaulted. Once this assault took place, Watson says, Campbell refused to allow him to go to the infirmary. These claims require further judicial proceedings.

Finally, Watson sues Paula Jones, the law librarian, saying that Jones told him that she would prevent him from coming to the law library if he filed anything about the incident, and that after he did file, she rescheduled him for law library sessions when he was at work. As a result, Watson says, he was unable to file grievances on face towels and screens on the windows because he could not cite the appropriate prison policies in his grievances. He did acknowledge that he could have filed the grievances which he wished to file without going to the law library or citing the policies. Watson said at the hearing that he was unable to get access to the law library for "several days," but then described the period as "almost a month."

To the extent that Watson raises a claim of denial of access to legal materials, the claim is without merit. Inmates have a right of access to legal materials, and prison officials cannot deny inmates access to court. Bounds v. Smith, 430 U.S. 817 (1976). However, actual injury must be shown to set out a violation of Bounds. Lewis v. Casey, 116 S.Ct. 2174, 2179-81 (1996) (actual harm must be shown to establish a violation of the right of access to court); *accord*, Mann v. Smith,

4

76 F.2d 79, 83 (5th Cir. 1986). In Lewis, the Supreme Court provided the following examples of "actual injury" under Bounds:

> [The inmate] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered some arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis, 116 S.Ct. at 2180.

Assuming, without deciding, that the inability to file grievances would be considered "actual harm" under Lewis, Watson still has not met this threshold. He acknowledged that he could have filed the grievances which he wanted to file even though he could not cite the appropriate regulations, although he preferred to do so. He has failed to show that he suffered any constitutional harm as a result of this brief period when he could not get access to the law library.

Nor has Watson shown a valid claim for retaliation. In Jones v. Greninger, 188 F.3d 322 (5th Cir. 1999), the Fifth Circuit expressed the law on retaliation as follows:

> To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.

Jones, 188 F.3d at 325-26. The Court went on to note that if the inmate was unable to point to a specific constitutional right that was violated, the claim would fail.

In that case, inmate Jones complained that he was retaliated against for filing grievances, and the retaliation took the form of limiting his right of access to court. This limitation involved a transfer to work in food service, so his legal research time would be limited to five hours per week. The Fifth Circuit held that there was no constitutional violation inherent in a limitation of law library access time to five hours per week; consequently, the Court said, because Jones had failed to show that the Defendants had engaged in conduct that will result in a violation of his right of access to court, his retaliation claim fails. Jones, 188 F.3d at 326.

5

Similarly, in Tighe v. Wall, 100 F.3d 41 (5th Cir. 1996), inmate Thomas Tighe was assigned to the job of "inmate counsel substitute." He was removed from this job for unsatisfactory job performance, and the warden later filed an affidavit saying that he believed Tighe had improperly called the family of an inmate about allegations of physical abuse within the prison. Tighe contended that his dismissal from the job was in retaliation for providing legal assistance to fellow inmates, apparently in the form of making the call to the other inmate's family.

The Fifth Circuit held that to survive summary judgment, Tighe must allege a violation of a constitutional right and demonstrate a retaliatory motive. Although Tighe argued that his First Amendment right of free speech included the right to give legal assistance to fellow inmates, and that he was removed from his job as inmate counsel and transferred to another prison in retaliation for exercising this right, the Fifth Circuit disagreed.

Instead, the Court held that prisoners have no constitutionally protected interest in a particular facility or a specific work assignment. The Court cited an Eighth Circuit case, Gassler v. Rayl, 862 F.2d 706 (8th Cir. 1988) as saying that the transfer of a prisoner for writ-writing does not in and of itself constitute the violation of a protected right, and said that Tighe's argument that prisoners had been deprived of his legal assistance was without merit because prisoners have no right to a particular inmate's help in legal matters, so long as the putative recipient's right of access to the courts is not infringed. Consequently, the Fifth Circuit concluded that Tighe had failed to show the violation of a constitutional right, and so his retaliation claim failed. Tighe, 100 F.3d at 43.

In the present case, Watson says that the retaliation took the form of scheduling his law library time when he was at work, denying him access to the law library for almost a month. However, Watson showed no constitutional harm which resulted from this denial. He stated that he was unable to file grievances, but then conceded that he could file grievances, but he could not cite policy directives in the grievances as he preferred to do. Watson has not shown that he was actually prevented from filing grievances or any other legal matters. Because Jones did not engage in actions

which resulted in a denial of his right to access the grievance procedure or the courts, his claim of retaliation is without merit. Jones, 188 F.3d at 326; Tighe, 100 F.3d at 43.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke, 490 U.S. at 327, *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Watson's claims against Jones lack any arguable basis in law and fail to state a claim upon which relief may be granted under federal law. Consequently, these claims may be dismissed as frivolous under 28 U.S.C. §1915A(b). Thompson v. Patteson, 985 F.2d 202, 207 (5th Cir. 1993). It is accordingly

ORDERED that the Plaintiff's claims against law librarian Paula Jones are hereby DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. Jones is hereby DISMISSED as a party to the lawsuit. It is further

ORDERED that the dismissal of these claims shall not count as a strike for purposes of 28 U.S.C. §1915(g). Finally, it is

ORDERED that the dismissal of these claims shall have no effect upon the Plaintiff's claims against the Defendants Hughes, Hutcherson, and Campbell.

So **ORDERED** and **SIGNED** this **4** day of **July, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE